UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BLUE WATER NAVY VIETNAM VETERANS ASSOCIATION, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT A. McDONALD, Secretary of Veterans Affairs, in his official capacity, <br><br> Defendant. | Civil Action No. 13-cv-1187 (TSC) |

## MEMORANDUM OPINION

Plaintiffs challenge a Department of Veterans Affairs ("VA") policy denying Blue Water Navy Vietnam veterans a presumption that they were exposed to Agent Orange during the Vietnam War. Defendant moves to dismiss the Complaint on a variety of grounds, including that this Court lacks subject matter jurisdiction and that Plaintiffs have failed to state a claim upon which relief may be granted.[1] Upon consideration of the motion, the response and reply thereto, and for the following reasons, the Court grants Defendant's motion to dismiss.

### I.     BACKGROUND

This is an Administrative Procedures Act case brought by two organizations: the Blue Water Navy Vietnam Veterans Association, Inc. and Military-Veterans Advocacy, Inc. These organizations represent Blue Water Navy Vietnam veterans—those veterans who served in deep water vessels off the coast of Vietnam during the war but never actually set foot on Vietnamese soil. Plaintiffs challenge the Secretary of Veterans Affairs' (the "Secretary") decision(s) denying

---

[1] The Court limits its discussion to Defendant's motion to dismiss, and will not opine on the parties' cross-motions for summary judgment.

a presumption of Agent Orange[2] exposure for Blue Water Navy Vietnam veterans.  Without this presumption it is significantly more difficult for Blue Water veterans to receive certain disability benefits from the VA.  Unlike ground troops, who receive direct access to these benefits because they are presumed to have been exposed to Agent Orange, Blue Water veterans must prove they were in fact exposed, which is an exceedingly difficult task given the dearth of records regarding Agent Orange use.  The denial of the presumption has been reiterated in a number of VA decisions, notices, and manuals, all of which Plaintiffs purport to challenge.

There is a long and complicated history surrounding Agent Orange and the aftermath of its use in the Vietnam War which need not be recounted here.[3]  For these purposes, it is enough to begin in 1991, when Congress passed the Agent Orange Act.  Pub. L. No. 102-4, 105 Stat. 11.  The Act required the VA to develop a list of diseases which were likely caused by exposure to Agent Orange during the Vietnam War.  Any veteran "who served in the Republic of Vietnam," 38 U.S.C. § 101(29), would be afforded a presumption that if they developed an enumerated disease, the VA would assume that disease was caused by Agent Orange exposure and the veteran could receive benefits without actually proving they were exposed.  38 U.S.C. § 1116.

Congress did not specify what it meant to have "served in the Republic of Vietnam" in the Agent Orange Act, but the VA has published a series of regulations defining service in Vietnam.  The most recent iteration of the relevant regulation states that "'Service in the Republic of Vietnam' includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam."  38 C.F.R. § 3.307(a)(6)(iii).  The dispute in this case centers on the VA's interpretation of this regulation,

---

[2] Agent Orange is the nickname for a chemical mixture containing the herbicide 2,3,7,8-Tetrachlorodibenzodioxin that was used in the Vietnam War to defoliate jungle areas.

[3] For more detailed background, *see Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008).

and principally whether the clause "if the conditions of service involved duty or visitation in the Republic of Vietnam" modifies only "service in other locations" or also modifies "service in the waters offshore." The difference is important because Blue Water Navy veterans did serve in the waters offshore, but their conditions of service did not involve duty or visitation in the Republic of Vietnam (as that phrase has been interpreted by the VA). If "service in the waters offshore" requires "duty or visitation" in Vietnam, then Blue Water veterans do not receive the presumption; if service offshore does not require "duty or visitation," then Blue Water veterans would receive the presumption and the access to benefits that come with it.

The VA first decided that the presumption of exposure did not apply to Blue Water veterans because they did not "serve in the Republic of Vietnam" pursuant to the Agent Orange Act in a precedential opinion issued by the VA General Counsel in 1997 (the "1997 GC Opinion").[4] A summary of the 1997 GC Opinion was published in the Federal Register later in 1997. 62 Fed. Reg. 63,603 (Dec. 1, 1997). According to Plaintiffs, the 1997 GC Opinion was then incorporated into a final rule published by the VA in 2001. 66 Fed. Reg. 23,166 (May 8, 2001). The 2001 rule added Type 2 diabetes as an enumerated disease under the Agent Orange Act, but also discussed the 1997 GC Opinion and explained:

> With respect to offshore service, 38 CFR 3.307(a)(6)(iii) provides that "Service in the Republic of Vietnam" includes service in offshore waters or other locations only if the conditions of service involved duty or visitation within the Republic of Vietnam. In interpreting similar language in 38 U.S.C. 101(29)(A), VA's General Counsel has concluded that service in a deep-water vessel in waters offshore the Republic of Vietnam does not constitute service "in the Republic of Vietnam." (See VAOPGCPREC 27-97). VA's regulatory definition of "Service in the Republic of Vietnam" predates the enactment of section 1116(a)(3) (see former 38 CFR 3.311a(a)(1) (1990)), and we find no basis to conclude that Congress intended to broaden that definition. The commenter cited no authority for concluding that individuals who served in the waters offshore of the Republic of Vietnam were subject to the same risk of herbicide exposure as those who served within the geographic boundaries of the Republic of Vietnam, or for concluding

---

[4] The General Counsel may issue opinions which are precedential, meaning they govern benefits determinations in future cases. 38 C.F.R. § 14.507.

that offshore service is within the meaning of the statutory phrase "Service in the Republic of Vietnam." We therefore make no change based on this comment.

*Id.*

The practical effect of these decisions is felt by individual veterans when they apply for benefits. Officials who process benefits claims use a manual (the M21-1 Manual) which instructs them on VA policy with respect to specific benefits-related issues. The M21-1 Manual includes instructions for how to process Blue Water veterans' claims. The Blue Water instructions first appeared in 2002, when the VA added an instruction that "[a] veteran must have actually served on land within the Republic of Vietnam (RVN) to qualify for the presumption of exposure to herbicides." (Def. Mot. Ex. 1 at 2). This instruction stayed in place until 2008, when the VA made a flurry of changes to the M21-1 Manual as a result of a lawsuit by a veteran challenging the denial of the presumption for Blue Water veterans. When the U.S. Court of Appeals for Veterans Claims held that the VA erred in denying the presumption, the VA rescinded the Blue Water provisions in the M21-1 Manual. 73 Fed. Reg. 20,363 (Apr. 15, 2008). Later that year, the Federal Circuit overturned the Court of Appeals for Veterans Claims in *Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008). The VA then reinserted the provision into the 2008 M21-1 Manual, citing the 1997 GC Opinion and instructing that "service in the Republic of Vietnam (RVN) means . . . service in the RVN or its inland waterways, or . . . service in other locations if the conditions of service involved duty or visitation in the RVN." (Def. Mot. Ex. 1 at 10). The VA amended the manual again in 2009 and 2011 to allow Blue Water Navy veterans to receive the presumption if they can show they were on a ship that docked on the shores of Vietnam or operated on the inland waterways or close coastal waters for extended periods. (AR[5] 1737, 1758). The 2011 manual also specifically instructed that "Service aboard a ship that

---

[5] Citations to "AR" refer to the administrative record.

4

*anchored* in an open deep-water harbor, such as Da Nang, Vung Tau, or Cam Ranh Bay, along the RVN coast does not constitute inland waterway service or qualify as docking and is not sufficient to establish presumptive exposure to herbicides, unless the Veteran served as a coxswain and reports going ashore during anchorage." (AR 1759).

Amid continuing pressure to reconsider the denial of the presumption, the VA commissioned a study by the Institute of Medicine of the National Academy of Sciences to analyze whether and to what extent Blue Water Navy veterans were exposed to herbicides during the Vietnam War (the "IOM Study").[6] The results of the IOM Study, released in 2011, are vigorously disputed between the parties in this case. The IOM Study found that there is no way to know whether Blue Water Navy veterans were or were not exposed to the same amount of herbicides as ground troops. (Compl. ¶ 38; AR 735-36). Plaintiffs argue that this shows that the VA's exclusion of Blue Water Navy veterans from the presumption is arbitrary and capricious because there is no scientific basis on which to deny them the presumption as compared to ground troops. However, the IOM Study also found that while there is no way to know who got exposed to what, ground troops had more "pathways" to exposure (or potential ways of being exposed) than Blue Water Navy veterans. (AR 735). The VA therefore contends their decision is not arbitrary and capricious because it is more likely that ground troops (and Brown Water Navy troops, or those troops serving in the inland waterways) were exposed than Blue Water troops.

In 2012, the VA published a Notice in the Federal Register summarizing the IOM Study and stating that "the Secretary has determined that the evidence available at this time does not

---

[6] Plaintiffs also rely on a 2009 IOM study which "recommend[ed] that members of the Blue Water Navy should not be excluded from the set of Vietnam-era veterans with presumed herbicide exposure." (Compl. ¶ 34). It appears that the VA commissioned the IOM Study to review and expand on the research conducted in 2009.

support establishing a presumption of exposure to herbicides for Blue Water Navy Vietnam Veterans." 77 Fed. Reg. 76,170 (Dec. 26, 2012). In response, Plaintiffs sent a series of letters to the VA in 2013 asking the VA to overturn its decision. Defendant argues that these letters constituted a petition for rulemaking, and the VA's response was a denial of a petition for rulemaking. (Def. Reply 14). Plaintiffs argue the "demand was not a request for rulemaking but a demand that he rescind his incorrect interpretive regulations." (Compl. ¶ 52). In any event, in a written letter, the VA declined to reconsider its position.

Plaintiffs then brought this lawsuit pursuant to the Administrative Procedures Act, challenging the denial of the presumption of exposure as irrational, arbitrary and capricious, unsupported by substantial evidence, and contrary to law. Plaintiffs vacillate in their briefs over exactly which agency actions they challenge, but in one place or another Plaintiffs purport to challenge at least the 1997 GC Opinion, the 2002 manual, the 2008 manual, the 2011 manual, the 2012 notice, and the VA's 2013 letter denial. Defendant moves to dismiss on a variety of grounds, including lack of subject matter jurisdiction, lack of standing, and failure to state a claim.

## II.     LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citation omitted). "Limits on subject-matter jurisdiction 'keep the federal courts within the bounds the Constitution and Congress have prescribed,' and those limits 'must be policed by the courts on their own initiative.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. FDIC,* 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi,* 394 F.3d 970, 972 (D.C. Cir. 2005)).  Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'"  *Disner v. United States,* 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States,* 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  The court "is not limited to the allegations of the complaint."  *Hohri v. United States,* 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds,* 482 U.S. 64 (1987).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Bd. of Elections & Ethics,* 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  Courts may raise issues of subject matter jurisdiction *sua sponte*, regardless of whether the parties contest the court's jurisdiction.  *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008).

### III. ANALYSIS

The Court will begin with Defendant's first argument: that this Court lacks subject matter jurisdiction because 38 U.S.C. § 511 precludes district court review of VA decisions related to benefits.  As a threshold matter, the Court notes that while under *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984), courts normally afford substantial deference to an agency's interpretation of the statutes that agency administers, "*Chevron* does not apply to statutes that . . . confer

jurisdiction on the federal courts. It is well established that '[i]nterpreting statutes granting jurisdiction to Article III courts is exclusively the province of the courts.'" *Murphy Exploration & Prod. Co. v. U.S. Dep't of the Interior*, 252 F.3d 473, 478 (D.C. Cir. 2001), *opinion modified on denial of reh'g*, 270 F.3d 957 (D.C. Cir. 2001) (citation omitted). When Congress has "established an enforcement scheme" that gives a party "direct recourse to federal court," it is "inappropriate to consult executive interpretations of [the jurisdiction-conferring statute] to resolve ambiguities surrounding the scope of [the party's] judicially enforceable remedy." *Adams Fruit Co., Inc. v. Barrett,* 494 U.S. 638, 650 (1990). In interpreting statutes like section 511, the D.C. Circuit has noted that "[a]lthough the Congress is authorized to preclude judicial review of agency action, we assume that the Congress has not done so absent 'clear and convincing evidence of a contrary legislative intent.'" *NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013) (citations omitted).

  a. <u>38 U.S.C. § 511</u>

 Section 511 reads:

> (a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.
> 
> (b) The second sentence of subsection (a) does not apply to—
> 
> (1) matters subject to section 502 of this title; . . .
> 
> (4) matters covered by chapter 72 of this title.

38 U.S.C. § 511. The parties here dispute whether the denial of the presumption of exposure (through the various agency actions reiterating the VA's initial 1997 decision) is a decision made by the Secretary "under a law that affects the provision of benefits," and whether section 511 applies to all types of agency decisions or only those made in individual benefits proceedings.

Defendant argues that the VA's decision to deny the presumption of exposure is clearly a decision under a law that affects the provision of benefits, as it directly affects the ability of Blue Water Navy veterans to receive VA benefits under the Agent Orange Act.  Plaintiffs do not squarely dispute that the challenged agency actions relate to benefits, but instead argue that section 511 does not apply to facial challenges to agency policies.  Instead, according to Plaintiffs, section 511 only applies to decisions made in the context of individual veteran benefits proceedings.  And because the Plaintiffs here are not individual veterans and do not challenge any specific determination made in the course of a benefits proceeding, section 511 does not apply and does not preclude this Court's jurisdiction.

A plain meaning interpretation of section 511 suggests that Congress meant to strip district court review of cases like this one.  The statute is intended to be broad, as it covers all questions of law and fact necessary to the Secretary's decision.  If that decision affects the provision of benefits, then it is unreviewable.  Congress therefore made clear that it intended to shield from court review most benefits-related decisions.  However, Congress included four limited exceptions to this general rule which allow for review of Secretary decisions, only two of which are relevant here.  One category of reviewable decisions are matters subject to 38 U.S.C. § 502, which permits review by the U.S. Court of Appeals for the Federal Circuit of Secretary decisions published in the Federal Register.  The second category are matters covered by chapter 72 of title 38, which provides a review mechanism for veterans to appeal benefits determinations (first to the Secretary, then to the Board of Veterans' Appeals, then the U.S. Court of Appeals for Veterans Claims, then the Federal Circuit.  *See* 38 U.S.C. §§ 7104, 7252, 7261, 7292).  If a case challenging a decision affecting the provision of benefits does not fall within one of the four exceptions listed in section 511, it is not reviewable by any court or other body.  If it is

reviewable, it is appealed pursuant to the review mechanisms provided by statute—either to the Federal Circuit or through specialized veterans' tribunals. Either way, under a plain meaning interpretation of section 511, a decision affecting the provision of benefits is never reviewable in a district court[7]—the only decisions that are reviewable at all are those enumerated in section 511's exceptions, and those review procedures bypass district court review entirely.

The structure of section 511 also belies Plaintiffs' interpretation that it only applies to individual benefits proceedings—in this case, one of the exceptions proves the rule. Under section 511(b)(1), matters subject to 38 U.S.C. § 502 may be reviewed, but only by the Federal Circuit. Section 502 allows the Federal Circuit to review "[a]n action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers." Section 552(a)(1) requires agencies to publish certain notices and rules in the Federal Register, and section 553 requires certain rulemakings to undergo notice-and-comment procedures. In practice (and perhaps by definition), agency notices and rulemakings published in the Federal Register do not pertain to any individual benefits proceeding, but instead are rules of general applicability setting out the VA's broad policies. If Plaintiffs were correct that section 511 only precluded review of decisions made in individual benefits proceedings, there would be no reason to include an exception for agency notices and rulemakings, as section 511 would not apply to these types of agency actions in the first place. A more logical reading is that Congress meant section 511 to apply to <u>all</u> decisions related to benefits—whether made in an individual case or published in the Federal Register as broad policy—but created a specific review mechanism for notices and rulemakings to provide litigants an avenue to challenge agency actions <u>not</u> made in particular benefits proceedings.

---

[7] Under 38 U.S.C. §§ 511(b)(2) and (3), district court review may be available for certain housing and small business loan and insurance matters.

b.  Legislative History of 38 U.S.C. § 511

While the Court finds that the text of section 511 is unambiguous and is not limited to decisions made in individual benefits proceedings, even if the Court were to find the statute ambiguous, the Court's reading is supported by legislative history.  Section 511 was part of a comprehensive overhaul of VA review procedures called the Veterans Judicial Review Act of 1988 (the "VJRA").  The VJRA expanded the scope of section 511 (formerly section 211) in response to a series of court decisions weakening the preclusion of review intended in section 211.  As Congress explained, "[t]he problem . . . is that it appears the courts are paying too much attention to the policy behind the enactment of 211(a) . . . and not enough attention to the explicit language that Congress used in isolating decisions of the Administrator from judicial scrutiny." H.R. Rep. No. 100-963, at 21, 1988 U.S.C.C.A.N. 5782, 5802.  Congress thus amended the wording of section 211 (now 511), explaining:

> The present wording of section 211(a) speaks of 'decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans'. This language has prompted debate about whether a particular decision arises in the administration of a statute providing benefits to veterans. To clarify Congressional intent, the revised section 211 addresses itself to decisions 'under a law affecting the provision of benefits'. The effect of this change is to broaden the scope of section 211, so that if, for example, the Administrator were to make a decision that a law precluding the provision of benefits to certain veterans did not conflict with another law prohibiting discrimination against disabled persons, that decision 'affects' the provision of benefits to such persons and could only be reviewed in accordance with the provisions of section 223 or chapter 71. Similarly, a challenge to the validity of a VA regulation, such as the 'seat time' rule involved in the Wayne State case, would have to be initially decided by the Administrator.

*Id.* at 27, 5809.  Importantly for this case, Congress specifically stated that "[b]y vesting jurisdiction of challenges brought under the APA solely in the Court of Appeals for the Federal Circuit, the bill deprives United States District Courts of jurisdiction to hear such matters under 28 U.S.C. 1331 . . . The committee also believes that the subject of veteran benefits rules and policies is one that is well suited to a court which has been vested with other types of specialized

jurisdiction." *Id.* at 28, 5810. *See also Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) ("The VJRA provides, for the first time, judicial review of veterans' benefits determinations in the Federal Circuit; at the same time it broadens section 211's preclusion of judicial review by other courts."). The legislative history of section 511 bolsters the interpretation that district courts are precluded from review of benefits-related decisions. *See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012) ("This preclusion extends not only to cases where adjudicating veterans' claims requires the district court to determine whether the VA acted properly in handling a veteran's request for benefits, but also to those decisions that may affect such cases."); *Bates v. Nicholson*, 398 F.3d 1355, 1365 (Fed. Cir. 2005) ("[A]n interpretation of section 511(a) that generally places review of Secretarial decisions under a single piece of legislation relating in whole or in part to benefits first in the Board, and then in the Court of Appeals for Veterans Claims, clearly serves the congressional purpose.").

  c. <u>Plaintiffs' Arguments</u>

Plaintiffs cite a handful of cases to argue that section 511 does not preclude district court review here. The cases on which Plaintiffs rely, however, do not support their reading of the statute.

The D.C. Circuit has explained the boundaries of section 511: "These cases make clear that, while the Secretary is the sole arbiter of benefits claims and issues of law and fact that arise during his disposition of those claims, district courts have jurisdiction to consider questions arising under laws that affect the provision of benefits as long as the Secretary has not actually decided them in the course of a benefits proceeding . . . § 511(a) prevents district courts from hearing a particular question only when the Secretary has 'actual[ly] deci[ded]' the question." *Broudy v. Mather*, 460 F.3d 106, 114 (D.C. Cir. 2006) (citation omitted). Plaintiffs argue that

*Broudy*'s holding limits section 511's scope to only those decisions made in the context of an individual benefits proceeding.[8] Plaintiffs likely read this ambiguity into *Broudy* because the Court there focused exclusively on whether a decision had been made in a benefits proceeding. There is no evidence, however, that the *Broudy* court meant to limit section 511 to only those circumstances. Instead, the *Broudy* court spoke in terms of benefits proceedings because the plaintiffs in that case had in fact brought individual benefits proceedings at the administrative level. Therefore, the Court analyzed whether the Secretary had actually ruled on the contested issues during those administrative proceedings. It did not hold, or even consider, the scope of the type of decisions covered by section 511, or whether a decision made outside of a benefits proceeding would be covered. *Broudy* turned on whether a decision had actually been made, not what type of decision was at issue. In this case, the Secretary has clearly made an actual decision, so even under *Broudy* this Court lacks jurisdiction.

Plaintiffs also rely heavily on a group of cases from the 1970s and 1980, including *Wayne State Univ. v. Cleland*, 590 F.2d 627 (6th Cir. 1978), *Univ. of Md. v. Cleland*, 621 F.2d 98 (4th Cir. 1980), and *Johnson v. Robinson*, 415 U.S. 361 (1974). These cases predate the expansion of

---

[8] The D.C. Circuit has noted that *Broudy* is in some conflict with the decisions in *Price v. United States*, 228 F.3d 420 (D.C. Cir. 2000) (per curiam) and *Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005), regarding whether, in those cases, a decision had been made in a benefits proceeding or not. *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 (D.C. Cir. 2010). The conflict between those cases is not whether the challenged decision was made in the context of a benefits proceeding, but instead whether a decision was made at all: the D.C. Circuit noted that in *Price* it was not clear whether the plaintiff challenged VA action or inaction, whereas in *Broudy* the court held that only VA actions were covered by section 511, not inaction. *See id.* ("We distinguished *Price* and *Thomas* as cases in which the VA (the Secretary) had actually made decisions that the plaintiff veterans were not entitled to benefits and the plaintiffs were seeking a review of those decisions, whereas in *Broudy,* the 'Secretary' (really the Board) never made a decision on the issues presented by the plaintiffs—whether officials subordinate to the Secretary had covered up relevant data—because that precise issue had not been presented to the Secretary (the Board). We indicated that only questions '*explicitly* considered' by the Secretary would be barred by § 511, not questions he could be 'deemed to have decided' or, presumably, implicitly decided . . . Undeniably, as the government suggested, there is tension between *Price* and *Thomas* on the one hand and *Broudy* on the other—particularly in light of our recognition in *Price* that the record did not even indicate whether the plaintiff had actually brought his reimbursement claim."). This tension is not relevant here because there is no question that the Secretary explicitly made a decision regarding the presumption of exposure. In addition, neither *Price*, *Thomas*, nor *Broudy* discussed or considered whether section 511 is limited to only individual benefits proceedings, or also includes challenges to rulemakings and other decisions made outside benefits proceedings.

section 511, and Congress specifically identified them as wrongly decided when amending section 511: "The problem with the Wayne State line of cases . . . is that it appears the courts are paying too much attention to the policy behind the enactment of 211(a) as articulated by the Court in Johnson v. Robinson, and not enough attention to the explicit language that Congress used in isolating decisions of the Administrator from judicial scrutiny." H.R. Rep. No. 100-963, at 21, 1988 U.S.C.C.A.N. 5782, 5802.  Plaintiffs' reliance on these cases is therefore misplaced.

Lastly, Plaintiffs rely on cases that permitted district court review of constitutional challenges to statutes related to VA benefits.  (Pls. Opp'n 13).  In those cases, the courts recognized that "Article III district courts have power to rule on the constitutionality of acts of Congress," and, given the "issues of constitutional separation of powers" that would be created if the VJRA was construed to insulate VA-related legislation from facial constitutional challenges, found that "§ 211(a) [now § 511(a)] could be literally construed to exclude judicial review only of 'decision[s] by the Secretary,' and not of facial constitutional challenges." *Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136, 140-41 (2d Cir. 1992) (citations omitted).[9]  These cases are irrelevant to the Court's analysis—Plaintiffs do not bring any constitutional claims and do not challenge the VA's interpretation of any statute, but rather challenge a "decision by the Secretary" which is precluded from review.

Here, the VA made a decision regarding the presumption of exposure under the Agent Orange Act.  This decision, as Plaintiffs admit, affects the provision of benefits.  This means the decision either cannot be reviewed at all, or can only be reviewed through the agency process or by the Federal Circuit.  Congress has left no room for district court review of these types of VA

---

[9] This is contrasted with as-applied challenges: "Since the enactment of the VJRA, federal courts have refused to entertain constitutional claims if they are based on the VA's actions in a particular case." *Zuspann v. Brown*, 60 F.3d 1156, 1159 (5th Cir. 1995).

14

decisions related to benefits, and this Court therefore lacks subject matter jurisdiction to hear Plaintiffs' case.

        d.   Other Grounds for Dismissal

The Secretary also raises numerous other grounds for dismissal, including that Plaintiffs lack standing to sue, some or all of Plaintiffs' claims are barred by the statute of limitations, some of the VA decisions should have been challenged in the Federal Circuit pursuant to 38 U.S.C. § 502, APA review is precluded because the VJRA provides an adequate remedy, and that Plaintiffs fail to state a claim under the reasoning set forth in *Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008).  Plaintiffs did not respond to some of these arguments, and they would therefore have been treated as conceded even if this Court had subject matter jurisdiction. *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  In light of the Court's finding that it lacks subject matter jurisdiction under section 511, however, it need not analyze the Secretary's additional arguments.

## IV.   CONCLUSION

The Court is sympathetic to the many challenges faced by Blue Water Navy Vietnam veterans and their families.  However, Congress chose to shield VA benefits decisions from review or channel them into specific courts, and the Court therefore has no jurisdiction to hear these claims.  As a result, Defendant's motion to dismiss is granted and the cross-motions for summary judgment are denied as moot.  An appropriate Order accompanies this Memorandum Opinion.

Date:  March 11, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge